IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                      Criminal No. 3:99cr200

JAMES WILBUR SCRUGGS

## MEMORANDUM OPINION

Having considered the Defendant's Motion for Sentence Reduction Under § 603(b) of the First Step Act and 18 U.S.C. § 3582(c) (ECF No. 229) and Defendant's Amended Motion for Sentence Reduction Under § 603(b) of the First Step Act and 18 U.S.C. § 3582(c) (ECF No. 230), the UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 234), and the Defendant's Reply to Government's Opposition (ECF No. 237).[1] For the reasons set forth below, Defendant's Amended Motion for Sentence Reduction Under § 603(b) of the First Step Act and 18 U.S.C. § 3582(c) (ECF No. 230) will be granted.

## BACKGROUND

James Wilbur Scruggs was convicted by a jury of conspiracy to interfere with interstate commerce by violence, in violation of 18

---

[1] This motion (ECF No. 230) replaces the Defendant's Motion for Sentence Reduction Under § 603(b) of the First Step Act and 18 U.S.C. § 3582(c) (ECF No. 229) which is hereby denied as moot.

U.S.C. § 1951(a) (Count One);[2] carjacking resulting in death, in violation of 18 U.S.C. § 2119(3) (Count Two);[3] false declarations before a grand jury, in violation of 18 U.S.C. § 1623(a) (Count Three),[4] and obstruction of justice, in violation of 18 U.S.C. § 1503(a) (Count Four).[5]  On February 3, 2003, Scruggs was sentenced to life imprisonment, the sentence required by the then mandatory sentencing guidelines.  Scruggs is confined at FCI Bennettsville where he has served approximately 265 months of his term of life imprisonment.

From all accounts, Scruggs has been a model prisoner and, indeed, the record establishes, in a manner not seen by the undersigned in any previous filings of this sort, that Scruggs is a rehabilitated individual.  Scruggs' motion for compassionate release is based upon the assertion that courts are empowered to consider a wide range of extraordinary and compelling reasons for release that a defendant might raise.  <u>United States v. McCoy</u>, 981 F.3d 271 (4th Cir. 2020).  The reasons advanced in this motion by Scruggs are that he was 19 years old at the time of the offense;

---

[2] Statutory Sentence:   20 years to life.

[3] Statutory Sentence:   Life.

[4] Statutory Sentence:   5 years.

[5] Mandatory Guideline Sentence:   10 years to life.

2

that he had no significant criminal history; and that, although he was involved in the death of a human being, he did not pull the trigger; and that release is called for to adjust a sentencing disparity. Finally, Scruggs asserts that, and correctly so, following United States v. Booker, 543 U.S. 220 (2005), the approach to federal sentencing has undergone substantial change and that Scruggs likely would not be sentenced today as he was in 2003.

The offenses for which Scruggs was prosecuted and convicted arose because of criminal activities in which he engaged with his cousins in the infamous Friend family. That evil group included Vallia Friend, the mother, and her three children, Eugene, Travis, and Philip Friend. The crimes committed by this family arose out of a plan to hijack tractor-trailer trucks being driven by independent truckers traveling on interstate highways in Virginia so that the Friends could take the truck to Texas to pick up a load of marijuana and deliver it to Atlanta where the Friends would be paid enough money to repurchase a vehicle owned by one of the older Friend brothers that had been repossessed for nonpayment.

The sordid story begins in the early morning hours of March 1, 1999 when Eugene, Travis, and Philip Friend, along with Scruggs and Eugene's girlfriend, Jackie Robinson, drove around downtown Richmond in search of a tractor trailer truck to hijack. Scruggs'

3

participation in the operation was to provide a semi-automatic pistol to the Friend brothers for use in the planned hijacking. The Friends located a truck parked near Lovings Produce Company in which the driver, Leonard Cornforth, was asleep while awaiting an opportunity to unload his load of potatoes at the produce company. All three brothers and Scruggs exited their car and went to Cornforth's truck. Scruggs was the lookout. Eugene, Travis, and Philip Friend approached the truck on different sides, entered the truck, and the three began to beat Cornforth who put up a considerable fight while he was being attacked. Therefore, Travis Friend shot Cornforth twice, using the pistol that he had gotten from Scruggs. The noise and commotion caused the conspirators to flee the scene without taking the truck. The evidence showed that, not long after the murder, a witness reported Scruggs attempting to sell the pistol.

Not long after the attempt to hijack Cornforth's vehicle and the resulting murder, the Friends committed two additional hijackings of independent truck drivers, but Scruggs was involved in neither of them. Nonetheless, it is appropriate to recount the facts of those crimes because, as will be seen, they are pertinent to the sentencing disparity issue presented by Scruggs. The attack on the second truck driver did not result in his death, but it left him maimed and unable to continue working. It was Philip,

4

the younger of the Friend brothers, who maimed that driver by pistol whipping him.

The next hijacking was in April and the Friend family (again without Scruggs but this time with Stanley Kirkwood as an associate) was driving on the highway in search of a vehicle to hijack. To make a long story short, the group took the driver (Mr. Lam) from his vehicle to a swampy area in rural Virginia, shot him, and left him to die. Travis Friend again was the shooter and he used a gun that Kirkwood provided, the same activity of which Scruggs was convicted. And, that appears to be Kirkwood's role in the matter.[6] The Friends then stole Lam's tractor trailer, took it to Texas, picked up a load of marijuana, and took it to Atlanta where they were apprehended.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate

---

[6] Lam's truck had a load of houseplants and Scruggs was involved in selling those plants.

release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

In United States v. McCoy, the Fourth Circuit explained that enactment of the First Step Act precipitated two significant changes to § 3582(c)(1)(a). As the Court explained, the statute created an incremental change that expanded the discretion of courts to consider leniency (United States v. McCoy, 981 F.3d at 276 (citing United States v. Zullo, 976 F.3d 228, 230 (2nd Cir. 2020)). In so doing, the Fourth Circuit explained that the Sentencing Commission, in an application note, had set out four categories of "extraordinary and compelling reasons." The first three established circumstances having to do with the defendant's medical conditions, health, age, and family circumstances. The Court then observed that "[f]ourth, and most important to this case [as is true here as well] is Application Note 1(D) and labeled other reasons, which permits a sentence reduction if 'there exists in the defendant's case an extraordinary and compelling reason other than' the above listed reasons . . ." Id. at 276-77.

In McCoy, the Fourth Circuit explained that the district court had granted the motions for compassionate release there for four reasons which constituted extraordinary and compelling reasons for reduction of sentence. First, the district court relied on the "incredible length" of a mandatory sentence. Also, the Court

6

relied on the fact that the defendant was a teenager with no relevant criminal history at the time of the offenses. Finally, the district court recited McCoy's rehabilitation as evinced through many educational and vocational achievements as well as his payments - approximately one-third of his restitution. In arriving at the decision to reduce the sentence, the district court also had considered the relevant sentencing factors under § 3553(a) and had found that they too supported the grant of compassionate release. The Fourth Circuit affirmed on all rationales given by the district court.

Scruggs' motion closely conforms to the motions that were before the Fourth Circuit in McCoy. Here too, Scruggs was slightly more than 19 years old when he committed the offenses of conviction. Second, although Scruggs had several encounters with the law as a juvenile, none were serious and his only adult conviction was for trespassing, a conviction for which Scruggs received a 90 day jail sentence with 80 days suspended on the condition of good behavior.

The record in this case is laden with letters from all manner of personnel at FCI Bennettsville attesting to the fact that Scruggs has been rehabilitated and has put to productive use the time that he has spent in prison. For example, he has earned a bachelor's degree and a masters' degree in Christian counseling.

7

He has put that degree to work working as a Chaplain's clerk. His progress reports indicate the many programs that Scruggs has completed while in prison. More recently, in an effort to help the facility through the COVID-19 crisis, he has worked as a member of the COVID-19 sanitation team sanitizing the facility during uses of equipment.

The chief psychiatrist at the facility advises that he sees "no benefit in keeping Mr. Scruggs was his family and community." And, in addition, the psychiatrist notes that Scruggs has worked as an inmate on the suicide watch companion program. The record reflects that Scruggs has completed numerous vocational training programs; has completed successfully the re-entry program; and has been adjudged a person of outstanding morale character by the coordinator of that program.[7] The BOP has assessed Scruggs' rehabilitation and has assessed him to be a low general risk of recidivism and minimum violent risk of release demonstrating a high level of rehabilitation.

Scruggs correctly recognizes that compassionate release may not be granted on rehabilitation alone. And, thus, he argues that there is a considerable disparity between the sentence that he received (life) and the sentence (240 months) that Stanley Kirkwood

---

[7] Scruggs' last disciplinary action was 14 years ago for smoking in an unauthorized area.

received for essentially the same kind of conduct (providing guns to the Friend family that were used to kill people). The difference between Kirkwood's and Scruggs' sentences appears to be that Kirkwood pleaded guilty while Scruggs pled not guilty and received a life sentence. The discrepancy is largely attributable to the fact that Scruggs did not receive a reduction for acceptance of responsibility and received a two point enhancement for obstruction of justice (for lying when testifying before the grand jury).

The United States does not dispute any of the points raised by Scruggs except that relating to sentence disparity, and, on that point, it contends that Kirkwood's lower sentence was attributable to the fact that he pled guilty and cooperated with the Government, whereas Scruggs pled not guilty, did not cooperate, and in fact lied to the grand jury. Insofar as it goes, the Government's argument is correct. However, neither the Government nor Scruggs take into account fundamental facts that are pertinent to the sentence disparity analysis.

It is true that the conspiracy in which Scruggs was involved warranted life sentences for the principal actors in the case, Vallia Friend, the mother who helped plan the murders that were at the heart of the Friend family's evil enterprise, Travis McKinnley Friend, and Eugene Lamont Friend, the brothers who were the driving

9

force behind the conspiracy, and Philip Friend, one of the most vicious members of the conspiracy. However, because he was a juvenile at the time of his conduct, Philip Friend's sentence was recently adjusted on remand from the United States Court of Appeals for the Fourth Circuit from a term of life imprisonment to 624 months (52 years). Stanley Kirkwood, whose role in the Friend's conspiracy was about the same as the role of Scruggs, received a sentence of 240 months and was released from prison in 2009 and from supervised release in 2012. Kirkwood, whose offense conduct was much like Scruggs', served 240 months. Another key member of the conspiracy was Jackie Merle Robinson who received a 70 month sentence and was released from the Bureau of Prisons in 2005. Her role was a central one in the conspiracy because she served as lascivious bait for the truck drivers to lure them to pull their trucks off of the highway so the brothers could capture them.

The sentences of Kirkwood, Robinson, and Philip Friend are key comparators for purposes of deciding the sentence disparity issue in this case. Most important is the sentence of Philip Bernard Friend. He was an active participant (and a vicious one) in the murders of two people and the maiming of another. His life sentence has been reduced to 52 years whereas Scruggs is facing a sentence of life imprisonment for far less serious conduct. That disparity alone warrants adjustment of Scruggs' sentence because

10

Scruggs' conduct pales when compared to the deliberate, calculated violence committed by Philip Friend and his extensive involvement in the deaths of two victims and the maiming of a third. The sentences imposed on Kirkwood and Robinson also teach that life imprisonment is not an appropriate sentence for Scruggs.

An examination of the sentencing factors under 18 U.S.C. § 3553 support the propriety of reducing Scruggs' life sentence. According to testing performed by the BOP, Scruggs is assessed to be a low general risk of reoffending and to have a minimum risk for violence. Viewed in perspective of Scruggs' limited criminal history before his conviction in this case, the BOP metrics permit a finding that Scruggs is not a danger to the community. Nor is further incarceration needed to deter Scruggs from future criminal activity. The comments of those who run the prison and the prison psychiatrist teach that Scruggs has been rehabilitated which, in turn, teaches that the deterrence component of § 3553, as applied here, augurs in favor of a sentence reduction.

Finally, since Scruggs was sentenced, the law respecting the sentencing of minors[8] has undergone significant change that supports reducing Scruggs' life sentence. At the time of the

---

[8] Miller v. Alabama, 567 U.S. 460 (2012); Montgomery v. Louisiana, 134 S. Ct. 718 (2016); U.S. Sentencing Commission, Youthful Offenders in the Federal System at 5 (May 2017).

11

offense of conviction, Scruggs was only four months past his nineteenth birthday. If sentenced today, that fact would counsel against a life sentence. Moreover, if the guidelines had not been mandatory at the time of Scruggs' sentencing, the Court would not have imposed a life sentence.

Considered individually, and as a whole, the § 3553 factors favor granting Scruggs' motion.

## CONCLUSION

For the foregoing reasons, and considering that this case is remarkably similar to those before the Court in <u>United States v. McCoy</u>, the Defendant's Amended Motion for Sentence Reduction Under § 603(b) of the First Step Act and 18 U.S.C. § 3582(c) (ECF No. 230) will be granted. An Order will issue.

It is so ORDERED.

/s/   REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 22, 2021